FILED

2014 JUN -4 P 2:58

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NASHIBKUMA PATEL,

Plaintiff,

v.

7-ELEVEN INC., a wholly-owned Subsidiary of SEVEN AND I HOLDINGS CO., LTD.,

Defendant.

Civil Action No. 1:14CV664-GBL-TCB

**VERIFIED COMPLAINT**

Plaintiff Nashibkuma Patel, by counsel, hereby files his Verified Complaint and alleges, with knowledge as to his own acts, and otherwise on information and belief, as follows:

**Introduction**

1. This is an action brought by a Virginia franchisee who is the victim of an unlawful cancellation of his franchise and undue influence exercised by Texas and Japanese corporations in the State of Virginia in violation of Virginia Code § 13.1-564 (2013). Defendants breached the franchise agreements, and Defendants also breached their covenant of good faith. Plaintiff seeks compensatory, consequential, and punitive damages; pre-judgment and post-judgment costs and interest; attorneys' fees; and any other relief this Court deems just and equitable.

**Parties**

2. Plaintiff Nashibkuma Patel ("Nashib and/or Plaintiff"), an individual, is a citizen of the State of Virginia.

3. 7-Eleven, Inc. is a corporation incorporated under the laws of Texas with a principal place of business at 1722 Routh Street, Suite 1000, Dallas Texas 75201. It is a citizen of the State of Texas.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 (diversity).

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b).

6. The amount in controversy on each count set forth below exceeds the sum of $75,000.00 exclusive of interests and costs.

**Jury Demand**

7. Plaintiffs hereby demand a trial by jury of all issues so triable.

**Designation of Lead Counsel**

8. Kendell S. Asbenson, Esq., is hereby designated as lead counsel for Plaintiff.

**Facts Common to All Counts**

9. This action is based on bad faith conduct and franchisor abuse.

10. Defendant 7-Eleven Inc., once a domestic icon, is now wholly-owned and controlled by the Japanese corporate Defendant, Seven & I Holdings Co. Ltd.

11. Seven & I Holding Co. Inc. is corporation incorporated under the laws of Japan with a principal place of business at 8-8 Nibancho, Chiyoda-ku, Tokyo 102-8452, Japan. It is a citizen of Japan.

12. As a result of its Japanese parent's business model, 7-Eleven has changed its relationship with its franchisees – going from a partnership to an authoritative "big brother" Japanese business model dictatorship with a history of bullying its franchisees.

13. For the past seven (7) years, Nashibkuma Patel ("Nashib" and/or "Plaintiff") has operated a 7-Eleven franchised store in good faith in Dale City, Virginia.

14. Plaintiff owned and operated an Exxon Gas station located at 4255 Seeton Square, Woodbridge, Virginia 22192.

15. On or about February 3, 2014, 7-Eleven Market Manager Greg Manzer ("Manzer") came to Plaintiffs store and served him with a Compromise and Settlement Agreement.

16. Manzer told Nashib, because he owned a competitive business, allegedly in violation of the Individual Store Franchise Agreement, he would either have to sell the 7-Eleven store or the Exxon Gas station by April 30, 2014.

17. Nashib received a Notice of Material Breach on February 7, 2014. This agreement would allow plaintiff to cure his alleged breach by either selling the 7-Eleven store or the Exxon Gas station. Under coercion and duress at the potential loss of his income earning businesses, and no time to seek legal advice, Nashib signed the Notice of Material Breach and told Market Manager Greg Manzer he would sell the gas station and keep the 7-Eleven store.

18. After seeking advice of counsel, Nashib's Exxon Gas Station was outside of the no-compete distance as stated in the Store Franchise agreement.

19. Under the terms and conditions of the Individual Store Franchise Agreement Nashib was prohibited "to have any financial or beneficial interest in....a Competitive Business which is....located within ½ mile of any 7-Eleven convenience store." The reality is the Exxon Gas Station and Nashib's 7-Eleven store were 1.5 miles apart – outside the no-complete area. Additionally, there are no 7-Eleven stores located within ½ mile of the Nashib's Exxon station.

20. On February 26, 2014, Nashib's 7-Eleven supervisor Lisa Black, requested a meeting with Zone leaders at a 7-Eleven corporate office.

21. On February 28, 2014 Nashib met with Zone leader James Summer, Greg Manzer and two 7-Eleven employees from the Asset Protection department.

22. Nashib was caught off guard and felt intimidated because he was not told what the meeting was about.

23. Bill Agin ("Agin") of Asset Protection interrogated Nashib about allegations he was taking merchandise from his 7-Eleven store to supply his Exxon Gas station.

24. Agin told Nashib his store merchandise shortage was high in the last six (6) months due to Nashib taking merchandise to his Exxon Gas station.

25. In reality Nashib was a victim of employee theft at the 7-Eleven store leaving the store short of merchandise.

26. 7-Eleven Asset Protection employee James Passarella took over the conversation and aggressively told Nashib they no longer wanted to do business with him and to forget about the cure of the material breach, a breach that should have never occurred, with the gas station well outside the non-compete area.

27. To Nashib's shock and dismay he was told he was brought into the meeting to take his store back from him that day.

28. Nashib reiterated the agreement to sell the gas station. Zone leader James Summer stated 7-Eleven wanted him to leave the store today.

29. He was forced, with no advice of counsel or time, to make a decision at that moment.

30. After a few moments Mr. Passarella gave Nashib one option. He would have 60 days to sell his 7-Eleven store but 7-Eleven will not support him in any way. No financing, no lottery machine, no money orders. He would have to purchase store merchandise himself. He would have to take over all payroll and tax related matter. These are all services that 7-Eleven is to provide under the Individual Store Franchise Agreement.

31. Then Mr. Passarella threatened to "go after" Nashib's parents who were store employees.

32. Nashib was given to option to sell his store in 30 days. Under duress and coercion, and given no time to think about his decision, Nashib reluctantly optioned for the 30 days to sell his store.

33. 7-Eleven breached their own agreement with Nashib by taking his store even after they agreed to a 30 day cure. Hence, 7-Eleven had no intention of allowing Nashib to sell the store so they can continue their wrath of taking stores, giving store owners no options.

34. Plaintiff found two buyers for his store. Due to rumors that his store was "taken back" by 7-Eleven the offer was very low, almost half of the asking price. 7-Eleven, true to form, disqualified both candidates.

35. With wanton disregard to the facts, 7-Eleven resorted to bullying tactics in order to coerce store owners to give up their stores.

36. The sole purpose of acquiring franchisees' stores – albeit through illegal means – is to implement a corporate policy of "take back" and "churning" of franchisee stores, at no cost, and ultimately resell the store, for a fee, to a third-party purchaser. Exhibit A, Certification of Former Corporate Investigations Supervisor Kurt McCord paragraphs 1 to 16 is attached as

evidence of pattern and practice. (Unsealed Docket No. 98-2, Naik v. 7-Eleven, 3:13-cv-4578, D.N.J.).

37. To achieve this goal, 7-Eleven hired more Asset Protection employees than any other company in 2013.

38. Specifically, 7-Eleven hired approximately thirty-five Asset Protection employees.

39. 7-Eleven uses it Asset Protection/Loss Prevention ("AP/LP") Department as a profit center to realize a significant return on its investment in hiring large numbers of Asset Protection employees.

40. Upon information and belief, 7-Eleven has instituted quotas to AP/LP Department which, in turn, incentivizes the AP/LP employees to bring dubious and fabricated charges based on unlawful and intimidating tactics.

41. Unlike 7-Eleven, most retailers use their asset protection departments in a "non-productive" manner to limit losses from theft and shrinkage.

42. However, 7-Eleven uses their AP/LP Department as a "productive work center" by taking back franchises at no cost to 7-Eleven – only to resell them for a larger fee by entering into store franchise agreements with more favorable terms for 7-Eleven.

43. 7-Eleven's effort to improperly "take over" franchises has been overwhelmingly profitable for 7-Eleven, albeit at the expense of the terminated franchisees.

**FIRST COUNT**

**(Violation of Virginia Code 13.1-564)**

44. The allegations of paragraphs 1 - 43 are hereby incorporated by reference.

45. Virginia Code § 13.1-571 provides a private cause of action for any for a franchisee who is the victim of an unlawful cancellation of franchise and undue influence in violation of Virginia Code § 13.1-564.

46. Virginia Code § 13.1-564 states: "It shall be unlawful for a franchisor to cancel a franchise without reasonable cause or to use undue influence to induce a franchisee to surrender any right given to him by any provision contained in the franchise."

47. Defendants are in violation of this statute.

**SECOND COUNT**

**(Declaratory Relief)**

48. The allegations of paragraphs 1 - 47 are hereby incorporated by reference.

49. Under the Store Franchise Agreement, Plaintiff must be given an opportunity to cure alleged defaults, with limited exceptions, none of which apply here.

50. Plaintiff was never given an opportunity to cure.

51. Defendant has constructively terminated Nashib's Store Franchising Agreement by discontinuing financing, vendor services, removing equipment necessary to run his store and cutting off payroll to his employees.

52. Pursuant to Federal Rule of Civil Procedure 57, Plaintiff seeks declaratory judgment stating that he did not materially violate the terms of the Store Franchise Agreement.

**THIRD COUNT**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

53. The allegations of paragraphs 1 - 52 are hereby incorporated by reference herein.

54. The covenant of good faith and fair dealing is implied in every contract entered into in the State of Virginia, including franchise agreements. Additionally, a franchisor's

affirmative obligations incorporate the inherent contractual obligation that the franchisor acts in good faith.

55. Defendant, at all relevant times, had the obligation to act in good faith in order to maximize the best of interests of Plaintiff under the franchise agreements.

56. Defendant has breached its implied covenant of good faith and fair dealing by and through numerous acts that have harmed Plaintiffs ability to operate their 7-Eleven franchise, by and through the following conduct:

(a) Coercing Plaintiff by forcing a thirty (30) day notice and an opportunity to cure a default that did not exist. Defendant fraudulently constructively terminated the Store Franchise agreement by erroneously cited a breach in the no-complete clause.

(b) Ceasing to deliver food, supplies and/or other necessary equipment to Plaintiffs or requiring that recommended vendors do the same.

57. As a direct and proximate result of Defendant's repeated breaches of the covenant of good faith and fair dealing, Plaintiff have sustained and continue to sustain substantial hardship and considerable monetary damage. Plaintiff herein seeks a declaration that 7-Eleven has acted in bad faith in connection with its obligations under the franchise agreements.

**WHEREFORE,** Plaintiff seeks relief against Defendant by way of an entry of an Order:

(a) Declaring and adjudging that Plaintiff has standing to bring claims under the Virginia Code § 13.1-564;

(b) Awarding compensatory damages;

(c) Awarding consequential damages;

(d) Awarding punitive damages;

(e) Pre- and post-judgment costs and interest;

(f) Awarding attorneys' fees and costs of suit; and

(g) Any other relief this Court deems just and equitable.

Respectfully Submitted,
NASHIBKUMA PATEL
By Counsel

Date: June 4, 2014

Kendell S. Asbenson, Esq. VSB # 83608
COON, PURNELL & MCKENNETT, PC
9214 Center Street, Suite 101
Manassas, Virginia 20110
tpurnell@manassaslawyers.com
kasbenson@manassaslawyers.com
Phone: (703) 368-9196
Fax: (703) 361-0092
*Counsel for Plaintiff*

In association with:
Gerald A. Marks, Esq.
MARKS & KLEIN, LLP
63 Riverside Avenue
Red Bank, New Jersey 07701
jerry@marksklein.com
Phone: (732) 747-7100
Fax: (732) 219-0625

**VERIFICATION OF NASHIBKUMA PATEL**

I, Nashibkuma Patel, Plaintiff in this matter, have read the contents of the Verified Complaint and hereby verify, under penalty of perjury, that the allegations set forth therein are true and accurate to the best of my knowledge.

Executed this 20 day of May, 2014

_______________ NASHIBKUMA PATEL